
FILED _____ RECEIVED
_____ ENTERED _____ SERVED ON
COUNSEL/PARTIES OF RECORD

JUL 1 2 2017

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

RONALD HULSEY,

Petitioner,

v.

QUENTIN BYRNE,

Respondent.

Case No. 3:16-cv-00069-RCJ-WGC

ORDER

Petitioner Ronald Hulsey's counseled petition for a writ of habeas corpus under 28 U.S.C. § 2254 is before the court on respondents' motion to dismiss (ECF No. 13). Hulsey opposed (ECF No. 23), and respondents replied (ECF No. 24).

### I. Procedural History and Background

On September 13, 2011, a jury convicted both Ronald Hulsey and his co-defendant Jeremy Turner of count I - second-degree murder and count II - battery with substantial bodily harm (exhibits 60, 61).[1] The convictions were based on events at a barbecue at Hulsey's home; Hulsey's wife and children, his brother-in-law Jeremy Turner and his children, mutual friend John Clymer, Clymer's girlfriend Carolyn Faircloth and Faircloth's son Carl Roberts were among the attendees. An alcohol-fueled argument started, and ultimately Hulsey and Turner severely beat Roberts and beat fifty-seven-year-old Faircloth, killing her. Exh. 55A, pp. 5-163. The state district court sentenced Hulsey to a term of life with the possibility of parole after ten years on count I and a consecutive

---

[1] Exhibits referenced in this order are exhibits to respondents' motion to dismiss, ECF No. 13, and are found at ECF Nos. 14-20.

term of 24 to 60 months on count II. Exh. 73. Judgment of conviction was entered on November 17, 2011. Exh. 74.

The Nevada Supreme Court affirmed Hulsey's convictions on October 8, 2012, and remittitur issued on November 4, 2012. Exhs. 94, 94A. On November 15, 2013, Hulsey filed a state postconviction petition for writ of habeas corpus. Exh. 95. On November 13, 2014, the Nevada Supreme Court affirmed the dismissal of the petition as untimely, and remittitur issued on December 10, 2014. Exhs. 109, 110.

Hulsey filed his counseled federal habeas petition on February 11, 2016 (ECF No. 1). Respondents now move to dismiss the petition (ECF No. 13).

## II. Instant Petition is Time-barred

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a one-year statute of limitations on the filing of federal habeas corpus petitions. 28 U.S.C. § 2244(d). The one-year time limitation can run from the date on which a petitioner's judgment became final by conclusion of direct review, or the expiration of the time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A). Further, a properly filed petition for state postconviction relief can toll the period of limitations. 28 U.S.C. § 2244(d)(2).

Here, the Nevada Supreme Court affirmed Hulsey's conviction in an order issued on October 8, 2012, and remittitur issued on November 4, 2012. Exhs. 94, 94A. Hulsey did not seek a petition for writ of certiorari with the United States Supreme Court, and therefore, for the purposes of the AEDPA, Hulsey's conviction was considered final ninety days after the final decision on appeal. *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009). Thus, Hulsey's conviction was final on January 7, 2013, and the AEDPA limitation period began to run.

NRS 34.726(1) provides that a state postconviction habeas corpus petition must be filed within one year after the Nevada Supreme Court issues its remittitur on direct appeal. Remittitur on direct appeal issued on November 4, 2012. Exh. 94A. Hulsey filed a state postconviction petition on November 15, 2013. Exh. 95. The Nevada

courts dismissed the petition as untimely. Exhs. 96, 109, 110. An untimely state petition is not considered "properly filed" for the purposes of the AEDPA, and therefore, Hulsey was not entitled to any tolling of the federal statute of limitations while the state petition was pending. *Pace v. DiGuglielmo*, 544 U.S. 408 (2005). Thus, the federal statute of limitations period expired on January 7, 2014. 28 U.S.C. § 2244(d)(1)(A). Accordingly, Hulsey's February 11, 2016 federal habeas petition is untimely.

Hulsey first argues that the AEDPA limitations period should be calculated from the date he discovered new evidence. 28 U.S.C. § 2244(d)(1)(D) provides that the AEDPA limitation period shall run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Hulsey claims that he first received a transcript of his co-defendant Jeremy Turner's state postconviction evidentiary hearing on October 18, 2015, and that Hulsey's federal claims are based upon his wife's and Turner's testimony at that hearing.

In his federal petition, Hulsey cites to his wife's and Turner's testimony at Turner's state postconviction proceedings. Hulsey fails to explain how his wife's and Turner's testimony about what happened is newly discovered evidence that could not have been discovered prior to October 2015 when he claims he received the transcript. In fact, Hulsey attached an affidavit by his wife to his state postconviction petition, filed on November 15, 2013. Exh. 95, pp. 12-16. Nor does he identify any portion of Turner's state postconviction testimony that constituted any fact not previously known to Hulsey.

The court first observes that the argument that this "newly discovered evidence" was not previously discoverable through the exercise of due diligence strains credulity. Second, Hulsey claims in his federal petition that his trial counsel was ineffective for failing to interview and investigate his wife and his co-defendant in order to ascertain how they would testify at trial. In other words, Hulsey attempts to argue both that his wife's and Turner's eyewitness accounts are newly discovered evidence not discoverable earlier through due diligence and that his trial counsel was ineffective for

3

failing to discover this evidence prior to trial. The positions are inherently contradictory, and the arguments in support of this federal petition border on frivolous.

Petitioner also argues that his claim of actual innocence allows him to overcome the time-bar (ECF No. 23). He contends that he did not fight with Roberts and instead was trying to break up the fight between Roberts and Turner and that he only used force against Faircloth to stop Faircloth who was battering his wife (ECF Nos. 1, 23). A convincing showing of actual innocence may enable habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims. *Schlup v. Delo*, 513 U.S. 298 (1995); *House v. Bell*, 547 U.S. 518 (2006). In *McQuiggin v. Perkins*, the United States Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations." 133 S.Ct. 1924, 1928 (2013). The Court emphasized that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.*; quoting *Schlup*, 513 U.S., at 329; *see House*, 547 U.S. at 538 (emphasizing that the *Schlup* standard is "demanding" and seldom met). In assessing a *Schlup* gateway claim, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U.S. at 332; *McQuiggin*, 133 S.Ct. at 1936 ("[f]ocusing on the merits of a petitioner's actual-innocence claim and taking account of delay in that context, rather than treating timeliness as a threshold inquiry, is tuned to the rationale underlying the miscarriage of justice exception–i.e., ensuring that federal constitutional errors do not result in the incarceration of innocent persons" (internal quotations and citations omitted).

John Clymer was the main eyewitness to testify at trial. Exh. 55A, pp. 5-163. Clymer testified that at the time of the incident he was close friends with Hulsey.

4

Clymer testified that his girlfriend Carolyn Faircloth was angry that Turner hit her son Carl Roberts, which led to Faircloth and Hulsey's wife fighting each other, including exchanging punches. He testified that Turner grabbed Faircloth off of Hulsey's wife and punched her in the face, knocking her to the ground. Clymer stated that subsequently Hulsey kicked Faircloth in the face while she lay on the ground, describing the kick as like a football kicker punting the ball. *Id.* at 96-97. Clymer testified that both Turner and Hulsey severely beat Roberts. *Id.*

At co-defendant Turner's evidentiary hearing on his state postconviction petition, Hulsey's wife testified that Hulsey's attorney told her to invoke spousal privilege at trial (ECF No 5, p. 74). Twice during the evidentiary hearing she testified that, while she did not see it, she thought that Hulsey kicked Faircloth in the face. *Id.* at 94, 97. She also testified that she never saw co-defendant Turner anywhere near Faircloth. *Id.* at 98.

Co-defendant Turner testified in support of his state postconviction petition that his trial counsel did not tell him before trial started that counsel was going to concede that Turner battered Faircloth and that Turner would not have agreed to that. *Id.* at 104. He testified that he "absolutely" did not punch Faircloth or ever kick her but that he did hit Carl Roberts. *Id.* at 110, 113. He testified that Hulsey stepped between he and Roberts to try to stop them from fighting. *Id.* at 109-110. He testified that he saw Hulsey kick Faircloth and saw Hulsey's wife punch Faircloth. *Id.* at 114-115. Turner's counsel mainly appeared to attempt to elicit testimony at the evidentiary hearing that it was Hulsey who caused Faircloth's death.

This court has reviewed the trial transcripts and the transcript petitioner filed of Turner's state postconviction evidentiary hearing. At best, if Hulsey's wife and co-defendant had testified at trial, the jury would have had to evaluate their credibility in comparison to Clymer's and the other witnesses. The court concludes that petitioner has failed to meet the demanding *Schlup* threshold requirement of demonstrating that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him

5

guilty beyond a reasonable doubt." *McQuiggin*, 133 S.Ct. at 1928. Thus, the petition is untimely, and petitioner has presented no meritorious basis to excuse such untimeliness.[2]

### III. Certificate of Appealability

As the petition is dismissed in its entirety, this is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

Having reviewed its determinations with respect to Hulsey's petition, the court finds that none meets the *Slack* standard. The court therefore declines to issue a certificate of appealability.

### IV. Conclusion

**IT IS THEREFORE ORDERED** that respondents' motion to dismiss (ECF No. 13) is **GRANTED**. The petition is DISMISSED as time-barred.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

---

[2] The court notes that respondents point out that Hulsey's federal petition also is wholly unexhausted. 28 U.S.C. § 2254(b)(1).

6

**IT IS FURTHER ORDERED** that petitioner's motion for issuance of ruling (ECF No. 26) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and close this case.

DATED: ~~21~~ 12th July 2017.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE